BOONE, administrator, *v.* LOGGINS.

No. 9513. FEBRUARY 17, 1934.

*G. Fred Kelley,* for plaintiff.

*Hammond Johnson* and *Wheeler & Kenyon,* for defendant.

BECK, P. J. Mrs. Margaret Loggins and John A. Boone are daughter and son of Mrs. Elmina Boone. John A. Boone, after having been appointed administrator of the estate of Mrs. Elmina Boone, brought suit against Mrs. Loggins to recover possession of a house and lot, the legal title to which was in Mrs. Elmina Boone. The defendant in her answer alleged a contract under the terms of which the mother made a parol gift to her; and prayed for decree that the title was in her. The jury returned a verdict for the defendant, and the title to the house and lot was decreed to be in her.

A motion for new trial was overruled, and Boone as administrator excepted.

■. The plaintiff contends that the jury could not render a verdict in favor of the defendant, because, under a decree rendered in the United States court prior to the bringing of this suit, the real question in the case was res adjudicata, and that if it was not res adjudicata it amounted to an estoppel by judgment. We can not agree to either of these contentions. The former suit (in the superior court of Hall County, Georgia, and removed to the Federal court), was brought by Mrs. Loggins against John A. Boone individually and as sole devisee of the house and lot in question. In that suit she set up that she had a contract with him whereby she moved into the house of their mother and cared for her and waited on her, and that he agreed to make her a deed to the house and lot for these services in case it was willed to him. She alleged that she moved into the house and waited on her mother and performed all the duties under the contract with her brother; that her mother owned the house and lot in question at the time of her death, and willed it to her brother; but that he refused to make a deed to her. Boone filed his answer denying the contract, and by cross-action he set up a contract between him and his sister, wherein he was to pay her $25 a month and build an addition to the house. Subsequently, on her motion, Mrs. Loggins was allowed to dismiss her suit without prejudice to her and to the rights of John A. Boone to have the questions adjudicated on his cross-action. In the United States court a decree was rendered that "Mrs. Margaret Loggins has no contract for the conveyance by John A. Boone of the land described in the pleadings, such as is set out in her bill; and that John A. Boone is, on his cross-bill, entitled to a decree that such right and interest as he may have in and to said land is free from any such contract or claim on the part of Mrs. Margaret Loggins."

The judgment and decree entered in the United States court did not amount to res adjudicata in the present case; nor is it a basis for application of the doctrine of estoppel by judgment. That suit was against John A. Boone individually, and it was based on an alleged contract between him and the defendant in error. In the cross-action in the present suit the defendant is setting up and insisting upon a contract with Mrs. Elmina Boone, whose estate is being administered by John A. Boone, and the cross-action is against

him as administrator. Nor can the administrator have the doctrine of inconsistent remedies applied as against Mrs. Loggins. The fact that she sued Boone upon a contract made with him, under which he undertook to do certain things in consideration for her services to their mother, is not inconsistent in the sense in which it would authorize the defendant to invoke the doctrine of inconsistent remedies—inconsistent with a suit in which she insists that her mother made a contract with her to give or convey to her the property in question; and the fact that she had stated the legal title to the property was in her mother did not amount to an estoppel in pais.

■ In another ground error is alleged upon the ruling of the court admitting the following testimony of the witness Conner: Q. "Did you hear him state what he was worth, and why he didn't care about the place? What, if anything, did he say he was worth or whether he cared for the place or not?" A. "He said his income was ten or twelve thousand dollars a year. I don't recall what he said he was worth. I think he said something about it, but I don't recall what it was." Q. "You don't recall the amount?" A. "No sir." Q. "What did he say about not caring for this place?" A. "He said that he didn't care for the place; he said, 'I would stay here and wait on mother if she would let me, but she won't; but I would rather give my place to my sister and let her wait on her.'" This ground raises no question for decision by this court, as it does not appear who made the statements that were objected to as irrelevant and immaterial.

■ The defendant was permitted to give the following answer to a question propounded to her: "I am just as willing to do what is right as anybody in the world. I don't want only what is right, and I want you people to do me justice." This answer was objected to upon the ground that it was argumentative. It does not appear to have been argumentative; and moreover it appears to be so immaterial as to be harmless.

■ It is urged that the evidence did not authorize the verdict. We have carefully considered this evidence; and while it may be meager, we can not hold as a matter of law that the jury were not authorized to find that a contract was made between Mrs. Elmina Boone and her daughter. A part of the testimony of the witness Mrs. Jot Allen is as follows: "I knew Mrs. Elmina Boone in her lifetime. All my life. She was my aunt, my mother's sister. I

knew John A. Boone and Mrs. M. E. Loggins. During the last years of Mrs. Boone's life her health was bad, and wasn't able to do anything for years; her eyesight was bad—she couldn't see to read for some time or to write. Mrs. M. E. Loggins looked after and waited on her the last years of her life. Mrs. Boone said for Mrs. Loggins to stay in her house as long as she lived, and that she aimed for her to have the home place when she died, for looking after her during her sickness up until her death. I heard the statement. I heard her make a statement of who was going to get what she had when she died; she said, 'Mrs. Loggins,' for looking after her and taking care of her in her old age. I remember when Mrs. Loggins moved into the house with Mrs. Boone, and I remember a conversation between the two just before Mrs. Loggins moved into the house with her, or about the time she moved in—between Mrs. Loggins and Mrs. Boone, and it was about the same, she wanted them to come up there to look after and take care of her as long as she lived, and she meant for Mrs. Loggins to have the home place on West Broad Street. Mrs. Loggins was coming anyway, but she told her she aimed for her to have the home place, and she moved in the house after I heard that conversation. After she moved in she done practically everything; she looked after Mrs. Boone, cooked for her, and waited on her in every way—she was a lot of trouble. Some of the nights I was there for several weeks, and she was there day and night, sitting up with her days and nights, for I don't know how many nights. Mrs. Loggins looked after her during that period; their attitude toward each other was good during that period; everything seemed to get along all right. . . During all that time John A. Boone was living in Texas. I don't remember how long he had been away from here, but it was about eighteen or twenty years. I had a conversation with him while he was here, he told me that Mrs. Loggins, his sister, would get the property, because he did not want it, . . that Mrs. Loggins was the one doing the work, and that he wasn't and couldn't be bothered with little things like that in Gainesville, and that his sister should have it and ought to have it. I said that Mrs. Boone said the property was to go to Mrs. Loggins for looking after her during her sickness in years back, and in looking after her, that is what she said, was to have the property."

Again, there was the following testimony of Mrs. Allen: "Q.

You know Mrs. Loggins claimed a contract with her brother and she moved into the house with her mother on account of the contract with her brother? A. On her mother's contract. Q. You knew she had it with her brother? A. He told her she could have the deed to it. Q. She made the contract with him to move up there? A. Mostly on her mother's contract."

Mrs. Loggins was permitted to testify as follows: "Q. What understanding, if any, induced you to leave your home to come up here and take care of your mother? A. Just cause it was mother and they give me everything. Q. Was the agreement with your brother the whole inducement to cause you to come up here to live with your mother, or part of it? A. It was part of it. Q. Was the agreement you had with your brother the only inducement that caused you to come up here? A. No, sir, that was not the only thing, or I would never have come." Of course Mrs. Loggins could not testify to conversations or transactions directly between her mother and herself; but we think that in view of the foregoing testimony, and the other facts and circumstances shown by the record, it can not be held as a matter of law that the jury were not authorized to find that the contract as contended for by Mrs. Loggins was established by the proof in the case.

*Judgment affirmed. All the Justices concur.*